### SQUIRES v. PENFIELD.

(Supreme Court, Appellate Term. February 24, 1910.)

PLEADING (§ 237*)—AMENDMENT—ANSWER—MEETING CAUSE OF ACTION PROVED.
Where the proof offered by plaintiff was admitted upon the understanding that, if a different cause of action was proved than that pleaded, defendant would be allowed to amend his answer, denial of his motion to amend for that purpose, made after plaintiff's proof was in, was erroneous.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 603; Dec. Dig. § 237.*]

Whitney, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Grant Squires against William W. Penfield. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before SEABURY, GUY, and WHITNEY, JJ.

Boudin & Liebman (L. B. Boudin, of counsel), for appellant.
John M. Rider, for respondent.

SEABURY, J. The complaint alleges a cause of action for legal services rendered at the request of the defendant. Proof was offered to establish, and the case was tried upon, the theory that the plaintiff was entitled to recover upon a contract of employment as broker. It seems to have been recognized at the outset of the case that the plaintiff could not establish the cause of action alleged, and the proof which was offered was accepted upon the understanding that, if a cause of action different from that alleged was proved, the defendant would be allowed to amend to enable him to meet the cause of action proved. Subsequently the defendant's motion to amend his answer was denied.

While the practice pursued upon the trial is not to be commended, it is obvious that, if the plaintiff was to be allowed to prove a different cause of action from that alleged, the defendant should have been permitted to offer evidence tending to establish a defense to the cause

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

·of action proved. This the defendant was not permitted to do, although the defendant seems to have consented to 'the proof of the new ·cause of action upon the distinct understanding that he should be permitted to amend his answer. It is now conceded by both counsel that the court submitted the case to the jury in. its charge upon an incorrect theory. The record shows that it is at least doubtful whether the ·plaintiff proved any cause of action at all against the defendant.

As the judgment must be reversed because the case was tried upon .an erroneous theory, it is unnecessary at this time to discuss the other .grounds of error which are assigned by the appellant.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GUY, J., concurs.

WHITNEY, J. (dissenting). The cause of action pleaded in the ·complaint is that defendant "retained and employed this plaintiff to ·examine the titles" to six parcels of land for mortgage loans, and .agreed to pay. $720 therefor, including the cost of title insurance and recording fees. The answer is a general denial. Defendant insisted ·throughout the trial that plaintiff was acting, not as a lawyer, but as .a broker, and finally induced the trial judge to adopt that view. I think that the evidence shows that plaintiff was not in any sense a 'broker, and that defendant at the time of the transaction did not con- ·sider him to be one. There is a branch of law practice which consists ·of taking general charge of the moneys of clients for purposes of investment, and ·particularly for investment in New York City mortgages .at a higher rate than could be got by loaning upon first-class business ·or residential. property. A lawyer who specializes in this branch of practice is obliged to familiarize himself with the land values in certain districts of the city, so that he can advise his clients on questions ·of value, as well as assure them against difficulties of title. He ordinarily employs a title company to guarantee the title, as well as an expert to give him an appraisement; but he is often obliged to assist the title company in its work, and he must exercise independent judg- ·ment in selecting the appraiser and pass upon the quality of his work. His clients are often largely (as they are in this instance) women or people residing at a distance. He takes great responsibility, and in ·case of apparent loss often feels obliged to relieve his client of the investment. He does none of the work of the broker. He does not run about trying to bring people together. The broker comes to him; and ·in order to serve his client properly he is obliged to waste a great deal ·of time in talking to brokers, who call about investments which he is ·obliged to reject. His compensation is very commonly the same percentage as that of a broker effecting a sale of real property. As a 'broker's compensation customarily comes from the vendor, although he may have been employed by the purchaser, so the compensation ·of the lender's attorney customarily comes from the borrower; the services being rendered for the benefit of the lender, but paid for by the borrower. As part of his agreement the compensation comes in

the form of agreed fees for searching the title; all the other services rendered by the attorney to the lender being thrown in.

It appears by the record that the parties were brought together in the customary manner by a broker. Defendant wanted to obtain a loan of $9,500 on certain property in the village of South Washingtonville, in an outlying portion of the borough of the Bronx. As is common in a district which is passing from a rural to an urban or suburban condition, there was great confusion as to the location and boundaries of supposed lots, and this (together with the fact that the property had been replatted) led to great obscurity and confusion as to how far it was subject to old arrears of taxes. Defendant, for instance, found that one of his lots, which he supposed and claimed to be 22 feet wide, was really but 3 feet wide. It is common for the proposed borrower to sign an agreement as to the .fees which he will pay to the broker and lender's attorney upon the loan. After some negotiations between the parties, defendant signed a paper reciting that he wanted a loan of $9,500 at 6 per cent., authorizing the broker to procure it for him, agreeing to pay him 2 per cent., and further agreeing to pay the plaintiff "$105 for his services and recording fees for each and every title." Afterwards another clause was added, giving plaintiff $15 in addition for each title, if he could obtain for his client a privilege to pay off the mortgage upon three months' notice. It was finally arranged that plaintiff should take four mortgages, upon four different parcels, each to a different client, loaning in all $7,600, and receiving for his own fee the sum of $480. This would be considered very exorbitant upon a loan in the settled districts of the city; but it might not have seemed so for this particular loan, if the loan had gone through.

The papers were to be passed March 1st. On that date defendant was not ready. Plaintiff refused to give him any extension, broke off all negotiations, and proceeded to sue for his compensation. As to whether he was justified in so doing there is a sharp conflict of testimony. Plaintiff seems to have tried the case all through upon a theory consistent with his complaint. Defendant's counsel, however, as soon as the plaintiff had opened to the jury, claimed insistently that the action was for broker's commissions, argued that the complaint ought to be amended to show this, and demanded the right to amend his answer by setting up affirmative defenses that, as he claimed, would be applicable to such an action, although not applicable to an action for attorney's fees. He refused to recognize the possibility of an agreement with A. to pay for legal services rendered to B., although plaintiff's counsel attempted to point out that it was not alleged "that we were employed to search the title for him." Finally the court offered to allow the defendant to amend his answer, if he would state how he wanted to amend it. This he was unable to do. The court then insisted that:

"If you wish to offer proof that you cannot under your answer, I will allow you to amend your answer."

When plaintiff rested, after proving the arrangements between the parties, defendant's counsel moved to amend the answer by setting

forth affirmatively various matters which were available to him under his general denial, and also pleading that the agreement between the parties was void, as against public policy, because "it provided for a gratuity or a payment to the attorney, to the plaintiff, who acted as the attorney for the other side, for a favor which he was to give the defendant herein if that contract was carried out," and that plaintiff is not the real party in interest. He expressed no desire to offer proof in support of these pleas. To take advantage of any defense disclosed by plaintiff's evidence, his general denial was enough. Landes v. Hart, 131 App. Div. 6, 115 N. Y. Supp. 337. His own subsequent proof, as well as that which had been introduced by the plaintiff, showed that the proposed pleas, if permitted, would have been overruled. Hence the motions to amend the answer and dismiss the complaint were properly denied.

The court charged the jury on the theory that the action was "brought to recover practically commissions for procuring the loan." Plaintiff concedes that the charge was not applicable to the case. But defendant took no exception, nor could he have taken advantage of the error, since he had himself induced it.

Some incompetent evidence was permitted on the part of the plaintiff which bore upon the really important issue as to who was in fault for breaking off the negotiations without actually making the loan; but defendant made no timely objection or motion to strike out, while he also was permitted to introduce incompetent evidence upon the point. The case was not tried in such a way as to bring out an intelligent verdict; but it seems to me that the fault was defendant's.

I can find no exception upon which the judgment can be reversed, nor is the verdict against the weight of the evidence admitted.

I therefore dissent.